JUDGE FURMAN

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
*Attorneys for Plaintiffs*

12 CV 3133

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
PRISCO NAJERA, ISRAEL FUENTES, CARLOS
ALTAMIRANO, CRISTOBAL BRAVO, LEVI
GALLARDO, LUGO ROMANO and PABLO
NAJERA, individually and on behalf of others
similarly situated,



                                    *Plaintiffs,*

                    -against-

1443 YORK GOTHAM PIZZA INC., (d/b/a
GOTHAM PIZZA), 1667 FIRST GOTHAM PIZZA,
INC., (d/b/a GOTHAM PIZZA), 144 NINTH
GOTHAM PIZZA, INC., (d/b/a GOTHAM PIZZA),
MICHAEL SHAMAILOV, LANA SHAMAILOV
and CENAN MENEDI,
                                    *Defendants.*
-------------------------------------------------------------X

**FLSA Collective Action**

**ECF Case**

Plaintiffs Prisco Najera, Israel Fuentes, Carlos Altamirano, Cristobal Bravo, Levi

Gallardo, Lugo Romano and Pablo Najera, individually and on behalf of others similarly

situated, ("Plaintiffs") by and through their attorneys, Michael Faillace & Associates, P.C., upon

their knowledge and belief, and as against 1443 York Gotham Pizza Inc., (d/b/a Gotham Pizza),

1667 First Gotham Pizza, Inc., (d/b/a Gotham Pizza), 144 Ninth Gotham Pizza, Inc., (d/b/a

Gotham Pizza) (together, "Defendant Corporations" or "Gotham Pizza Group") and Michael

Shamailov, Lana Shamailov and Cenan Menedi (each, an "Individual Defendant" and collectively with Defendant Corporations, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendant Corporations ("Gotham Pizza Group").

2.      Upon information and belief, Gotham Pizza Group is comprised of three corporations that act in partnership with one another in the operation and management of a chain of pizzerias in the state of New York. The three corporations include: 1443 York Gotham Pizza, Inc., (d/b/a Gotham Pizza), 1667 First Gotham Pizza, Inc. and 144 Ninth Gotham Pizza, Inc.

3.      Upon information and belief, Gotham Pizza Group is owned and operated by Individual Defendants Michael Shamailov, Lana Shamailov and Cenan Menedi.

4.      Upon information and belief, Individual Defendants Michael Shamailov, Lana Shamailov and Cenan Menedi serve as owners, principals or agents of Defendant Corporations and through those corporate entities operate or operated the chain of pizzerias referred to above as a joint or unified enterprise.

5.      Plaintiffs are present and former employees of Defendants.  They were ostensibly employed as delivery workers, counter attendants and pizza makers.

6.      However, for delivery workers, the daily work performed by each of Plaintiffs entailed additional responsibilities that were not related to deliveries.

7.      At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and

state law and regulations. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Defendants employed and accounted for several Plaintiffs as delivery workers in their payroll, but in actuality their duties included greater or equal time spent in non-delivery, non-tipped functions such as preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and receiving and stocking deliveries around the basement.

9.      At all times, regardless of duties, Defendants paid delivery workers at the lowered tip-credited rate.

10.     However, under both the FLSA and NYLL Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them delivery workers instead of non-tipped employees.

12.     For at least six years prior to the filing of this action, continuing to the present, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other delivery employees' tips and made unlawful deductions from Plaintiffs' and other delivery employees' wages.

3

13.     Plaintiffs now bring this action to recover damages, including but not limited to, unpaid minimum wages and overtime premiums, liquidated damages, interest, attorneys' fees and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et seq*., and the spread of hours wage order of the New York Commissioner of Labor, 12 N.Y.C.R.R. § 137-1.7 (2005) ("Spread of Hours Wage Order").

14.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216 (b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216 (b) ("FLSA"), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367 (a).

16.     Venue is proper in this District under 28 U.S.C. § 391 (b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside and Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

17.     Plaintiff Prisco Najera ("Plaintiff Prisco") is an adult individual residing in New York County, New York.

18.     Plaintiff Prisco was employed by Defendants from approximately June 2009 through March 13, 2012.

19.     During his employment, Plaintiff Prisco worked at 1443 York Avenue, New York, New York, 10021 ("York Avenue") and 1667 First Avenue, New York, New York 10028 ("First Avenue").

20.     Plaintiff Israel Fuentes ("Plaintiff Fuentes") is an adult individual residing in New York County, New York.

21.     Plaintiff Fuentes was employed by Defendants from approximately June 2008 through March 29, 2012.     During his employment, Plaintiff Fuentes worked at the York Avenue, First Avenue and 144 Ninth Avenue, New York, New York 10021 ("Ninth Avenue") locations.

22.     Plaintiff Carlos Altamirano ("Plaintiff Altamirano") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Altamirano was employed by Defendants as a delivery worker from approximately August 2010 to October 2011 and as a pizza maker from October 2011 to March 2012.

24.     During the course of his employment, Plaintiff Altamirano worked at the York Avenue, First Avenue and Ninth Avenue locations.

25.     Plaintiff Cristobal Bravo ("Plaintiff Bravo") is an adult individual residing in Queens, New York.

26.     Plaintiff Bravo was employed by Defendants as a delivery worker from approximately November 2009 until March 29, 2012.

27.     During the course of his employment, Plaintiff Bravo worked at the York Avenue and First Avenue locations.

5

28.     Plaintiff Levi Gallardo ("Plaintiff Gallardo") is an adult individual residing in Kings County, New York.

29.     Plaintiff Gallardo was employed by Defendants as a pizza maker from approximately April 2010 until July 2011.

30.     During the course of his employment, Plaintiff Gallardo worked at the First Avenue location.

31.     Plaintiff Lugo Romano ("Plaintiff Romano") is an adult individual residing in Bronx County, New York.

32.     Plaintiff Romano was employed by Defendants as a delivery worker from approximately April 2009 until September 18, 2011.

33.     During the course of his employment, Plaintiff Romano worked at the Ninth Avenue and York Avenue locations.

34.     Plaintiff Pablo Najera ("Plaintiff Pablo") is an adult individual residing in New York County, New York.

35.     Plaintiff Pablo was employed by Defendants as a pizza maker from approximately September 2011 until November 2011.

36.     During the course of his employment, Plaintiff Pablo simultaneously worked at the York Avenue, First Avenue and Ninth Avenue locations.

*Defendants*

37.     Upon information and belief, 1443 York Gotham Pizza, Inc. is a domestic corporation organized and existing under the laws of the State of New York. It maintains its

corporate headquarters and operates a pizzeria called Gotham Pizza at 1443 York Avenue, New York, New York, 10021 (the "York Avenue" location).

38. Upon information and belief, 1667 First Gotham Pizza, Inc. is a domestic corporation organized and existing under the laws of the State of New York. It maintains its corporate headquarters and operates a pizzeria called Gotham Pizza at 1667 First Avenue, New York, New York 10028, (the "First Avenue" location).

39. Upon information and belief, 144 Ninth Gotham Pizza, Inc. is a domestic corporation organized and existing under the laws of the State of New York. It maintains its corporate headquarters and operates a pizzeria called Gotham Pizza at 144 Ninth Avenue, New York, New York 10021 (the "Ninth Avenue" location).

40. Upon information and belief, Defendant Michael Shamailov ("Defendant Shamailov") is an individual engaged in business in New York City.

41. Defendant Shamailov is sued individually and in his capacity as an owner, officer and/or agent of Defendant Corporations.

42. Defendant Shamailov possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

43. Defendant Shamailov determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

44.

45.     Upon information and belief, Defendant Lana Shamailov ("Defendant Lana") is an individual engaged in business in New York City.

46.     Defendant Lana is sued individually and in her capacity as an owner, officer and/or agent of Defendant Corporations.

47.     Defendant Lana possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

48.     Defendant Lana determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

49.     Upon information and belief, Defendant Cenan Menedi ("Defendant Menedi") is an individual engaged in business in New York City.

50.     Defendant Menedi is sued individually and in his capacity as an owner, officer and/or agent of Defendant Corporations.

51.     Defendant Menedi possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controlled significant functions of Defendant Corporations.

52.     Defendant Menedi determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

53.     Defendants operate a chain of Pizzerias located throughout New York, New York.

54.     The Individual Defendants, Michael Shamailov, Lana Shamailov and Cenan Menedi, possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

55.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

56.     Each Defendant possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

57.     Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

58.     In the alternative, Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

59.     Upon information and belief, Individual Defendant MICHAEL SHAMAILOV operates each of Defendant Corporations as either an alter ego of himself, and/or fails to operate Defendant Corporations as entities legally separate and apart from his own self, by, amongst other things:

9

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations;

(b) defectively forming or maintaining the corporate entities of Defendant Corporations, by amongst other things failing to hold annual meetings or maintaining appropriate corporate records;

(c) transferring assets and debts freely as between all Defendants;

(d) operating Defendant Corporations for his own benefit as the sole or majority shareholder;

(e) operating Defendant Corporations for his own benefit and maintaining control over them as closed corporations;

(f) intermingling assets and debts of his own with Defendant Corporations;

(g) diminishing and/or transferring assets of the entities to avoid full liability as necessary to protect his own interests; and

(h) other actions evincing a failure to adhere to the corporate form.

60.    Upon information and belief, Individual Defendant LANA SHAMAILOV operates each of Defendant Corporations as either an alter ego of herself, and/or fails to operate Defendant Corporations as entities legally separate and apart from her own self, by, amongst other things:

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations;

(b) defectively forming or maintaining the corporate entities of Defendant Corporations, by amongst other things failing to hold annual meetings or maintaining appropriate corporate records;

(c) transferring assets and debts freely as between all Defendants;

(d) operating Defendant Corporations for her own benefit as the sole or majority shareholder;

(e) operating Defendant Corporations for her own benefit and maintaining control over them as closed corporations;

(f) intermingling assets and debts of her own with Defendant Corporations;

(g) diminishing and/or transferring assets of the entities to avoid full liability as necessary to protect her own interests; and

(h) other actions evincing a failure to adhere to the corporate form.

61.    Upon information and belief, Individual Defendant CENAN MENEDI operates all Defendant Corporations as either an alter ego of himself, and/or fails to operate Defendant Corporations as entities legally separate and apart from his own self, by, amongst other things:

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as corporations;

(b) defectively forming or maintaining the corporate entities of Defendant Corporations, by amongst other things failing to hold annual meetings or maintaining appropriate corporate records;

(c) transferring assets and debts freely as between all Defendants;

11

(d) operating Defendant Corporations for his own benefit as the sole or majority

shareholder;

(e) operating Defendant Corporations for his own benefit and maintaining control over

them as closed corporations;

(f) intermingling assets and debts of his own with Defendant Corporations;

(g) diminishing and/or transferring assets of the entities to avoid full liability as

necessary to protect his own interests; and

(h) other actions evincing a failure to adhere to the corporate form.

62.     At all relevant times, Defendants were the Plaintiffs' employers within the

meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire

Plaintiffs, control their terms and conditions of employment, and determine the rate and method

of any compensation in exchange for Plaintiffs' services.

63.     In each year from 2006 to the present, Defendants had gross annual sales of no

less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

64.     In addition, upon information and belief, Defendants and/or their enterprise were

directly engaged in interstate commerce. For example, numerous items that were used in the

restaurants on a daily basis were goods produced outside of the state of New York.

*Individual Plaintiffs*

65.     Plaintiffs are current and former employees of Defendants, primarily employed as

pizza makers, counter attendants and delivery workers. However, the delivery workers were

regularly required to perform extensive additional duties beyond the scope of their primary job

responsibilities. These additional, non-tipped and non-related duties occupied a significant amount of Plaintiffs' time during each workday.

66.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216 (b).

<em>Plaintiff Prisco Najera ("Plaintiff Prisco")</em>

67.     Plaintiff Prisco was employed by Defendants from approximately June 2009 to March 13, 2012.

68.     Throughout his employment with Defendants, Plaintiff Prisco worked at both Gotham Pizza York Avenue and First Avenue location.

69.     Defendants ostensibly employed Plaintiff Prisco as a delivery worker. However, Plaintiff Prisco was also required to perform additional duties including preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and receiving and stocking deliveries around the basement.

70.     Although Plaintiff Prisco was ostensibly employed as a delivery worker, he spent more than three hours on a daily basis performing non-delivery work throughout his employment with Defendants.

71.     Plaintiff Prisco regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

13

72.    Plaintiff Prisco's work duties required neither discretion nor independent judgment.

73.    Throughout his employment with defendants, Plaintiff Prisco regularly worked more than 40 hours a week.

74.    From approximately June 2009 until June 2011, Plaintiff Prisco worked from 10:30 a.m. to 9:00 p.m. six days a week (typically 63 hours per week).

75.    From approximately July 2011 until March 2012, Plaintiff Prisco worked from 10:30 a.m. to 9:00 p.m. on Mondays, Thursdays and Fridays, from 12:00 p.m. to 8:00 p.m. on Saturdays and from 6:00 p.m. to 12:00 a.m. on Tuesdays and Wednesdays (typically 51.5 hours per week).

76.    Throughout his employment with Defendants, Plaintiff Prisco was paid in cash.

77.    From approximately June 2009 until June 2011, Plaintiff Prisco was paid $250.00 per week.

78.    From approximately July 2011 until March 13, 2012, Plaintiff Prisco was paid at the rate of $4.65 for the first 40 hours and $7.00 for hours worked over 40 in a week.

79.    Defendants did not grant Plaintiff Prisco any breaks or meal periods of any kind.

80.    Plaintiff Prisco was never notified by Defendants that his tips would be included as an offset for wages.

81.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Prisco's wages.

82.    Defendants would withhold Plaintiff Prisco's tips until the end of the week and then would not pay him the full amount of tips he had earned.

83. No notification, either in the form of posted notices, or other means, was given to Plaintiff Prisco regarding overtime and wages under the FLSA and NYLL.

84. Prior to June 2011, Plaintiff Prisco was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

85. From July 2011 to March 2012, Defendants required Plaintiff Prisco to write on a piece of paper the times of arrival and departure.

86. Defendants did not provide Plaintiff Prisco with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

87. Instead, in order to disburse his paycheck, Defendants required Plaintiff Prisco to sign a document the contents of which were unknown to him.

88. Defendants required Plaintiff Prisco to purchase "tools of the trade" with his own funds—including three bicycles (one for $300, one for $250 and one for $450) and two locks and chains for $65 each. Thus, the total cost of the "tools of the trade" Plaintiff Prisco was required to purchase as a delivery worker was approximately $1130.

*Plaintiff Israel Fuentes*

89. Plaintiff Fuentes was employed by Defendants from approximately June 2008 until March 29, 2012.

90. During the course of his employment with Defendants, Plaintiff Fuentes was stationed at the York Avenue, First Avenue and Ninth Avenue locations.

91. Defendants ostensibly employed Plaintiff Fuentes as a delivery worker.

15

92.    However, Plaintiff Fuentes was also required to perform additional duties including preparing Salads, assisting the dough maker by bringing the ingredients he needed, making and weighing dough balls, making pizza sauce, sweeping and mopping, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, cutting dough squares for sicilian pizza, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, receiving and stocking deliveries around the basement, cutting dough squares for sicilian pizza, watching out for the owner's car to prevent from getting a ticket and paying for any tickets that he got.

93.    Although Plaintiff Fuentes was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

94.    Plaintiff Fuentes regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

95.    Plaintiff Fuentes's work duties required neither discretion nor independent judgment.

96.    Throughout his employment with Defendants, Plaintiff Fuentes regularly worked more than 40 hours per week.

97.    From approximately June 2008 until on or about October 2008, Plaintiff Fuentes worked from 10:30 a.m. to 9:00 p.m. six days a week at the Ninth Avenue location (typically 63 hours per week).

98. From approximately October 2008 to June 2011, Plaintiff Fuentes worked from 10:30 a.m. to 9:00 p.m. six days a week at the York Avenue Location (typically 63 hours per week).

99. From approximately July 2011 to March 29, 2012, Plaintiff Fuentes worked from 10:30 a.m. to 12:00 a.m. on Tuesdays and Wednesdays, from 10:30 a.m. to 9:00 p.m. on Thursdays, from 12:00 p.m. to 3:00 a.m. on Fridays, from 5:00 p.m. to 3:30 a.m. on Saturdays and from 4:00 p.m. to 12:00 a.m. on Sundays at the First Avenue location (typically 72 hours per week).

100. Throughout his employment with Defendants, Plaintiff Fuentes was paid in cash.

101. From approximately June 2008 until June 2011, Plaintiff Fuentes was paid $250 per week.

102. From approximately July 2011 until March 29, 2012, Plaintiff Fuentes was paid at the rate of $4.65 per hour for the first 40 hours and $7.00 per hour for all hours worked over 40 in a week.

103. Defendants did not grant Plaintiff Fuentes any breaks or meal periods of any kind.

104. Plaintiff Fuentes was never notified by Defendants that his tips would be included as an offset for wages.

105. Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Fuentes's wages.

106. Defendants would withhold Plaintiff Fuentes' tips until the end of the week and then would not pay him the full amount of tips he had earned.

107.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Fuentes regarding overtime and wages under the FLSA and NYLL.

108.    Prior to June 2011, Plaintiff Fuentes was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

109.    From July 2011 to March 2012, Defendants required Plaintiff Fuentes to write on a piece of paper the times of arrival and departure.

110.    Defendants did not provide Plaintiff Fuentes with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

111.    Instead, in order to disburse his paycheck, Defendants required Plaintiff Fuentes to sign a document the contents of which were unknown to him.

112.

113.    Defendants required Plaintiff Fuentes to purchase "tools of the trade" with his own funds—including four bicycles (three for $150 and one for $450) and a chain and lock for $65. Thus, the total cost of the "tools of the trade" Plaintiff Fuentes was required to purchase as a delivery worker was approximately $965.

*Plaintiff Carlos Altamirano ("Plaintiff Altamirano")*

114.    Plaintiff Altamirano was employed by Defendants from approximately August 2010 until March 2012.

115.    During the course of his employment with Defendants, Plaintiff Altamirano was stationed at the York Avenue, First Avenue and Ninth Avenue locations.

116.    From August 2010 to October 2011, Defendants ostensibly employed Plaintiff Altamirano as a delivery worker.

117.    However, Plaintiff Altamirano was also required to perform additional duties including preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, and receiving and stocking deliveries around the basement.

118.    Although Plaintiff Altamirano was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

119.    Plaintiff Altamirano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

120.    Plaintiff Altamirano's work duties required neither discretion nor independent judgment.

121.    From approximately august 2010 until October 2011, Plaintiff Altamirano worked from approximately 10:30 a.m. to 9:00 p.m. on Mondays and Tuesdays, from 3:00 p.m. to 12:00 a.m. on Wednesdays, from 10:30 a.m. to 11:00 p.m. on Fridays, Saturdays and Sundays (typically 67.5 hours per week).

122.    From approximately October 2011 until March 2012, Plaintiff Altamirano worked from approximately 10:30 a.m. to 11:00 p.m. on Mondays at the York Avenue location, from 10:30 a.m. to 12:00 a.m. on Wednesdays, from 3:00 p.m. to 3:00 a.m. on Fridays and Saturdays, and from 12:00 p.m. to 12:00 p.m. on Sundays at the First Avenue location; and from 10:30 a.m. to 10:00 p.m. on Thursdays at the Ninth Avenue location (typically 73.5 hours per week).

123.    Throughout his employment with Defendants, Plaintiff Altamirano was paid in cash.

124.    From approximately August 2010 until June 2011, Plaintiff Altamirano was paid $250 per week.

125.    From approximately July 2011 to October 2011, Plaintiff Altamirano was paid at the rate of $4.65 per hour for the first 40 hours and $7.00 per hour for each hour over 40 in a week.

126.    From approximately October 2011 to November 2011 Plaintiff Altamirano was paid at the rate of $7.00 per hour.

127.    From December 2011 to March 2012, Plaintiff Altamirano was paid at the rate of $9.70 per hour.

128.    Defendants did not grant Plaintiff Altamirano any breaks or meal periods of any kind.

129.    Plaintiff Altamirano was never notified by Defendants that his tips would be included as an offset for wages.

130.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Altamirano's wages.

131.    Defendants would withhold Plaintiff Altamirano's tips until the end of the week and then would not pay him the full amount of tips he had earned.

132.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Altamirano regarding overtime and wages under the FLSA and NYLL.

133.    Prior to June 2011, Plaintiff Altamirano was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

134.    From July 2011 to March2012, Defendants required Plaintiff Altamirano to write on a piece of paper the times of arrival and departure.

135.    Defendants did not provide Plaintiff Altamirano with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

136.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Altamirano regarding overtime and wages under the FLSA and NYLL.

137.    Instead, in order to disburse his paycheck, Defendants required Plaintiff Altamirano to sign a document the contents of which were unknown to him.

138.    Defendants required Plaintiff Altamirano to purchase "tools of the trade" with his own funds—including three bikes for $200 each, a lock and key set for $60, a pizza carrier/holder for $35.00, a carrot peeler for $6.00 and glue for repairing a problem in a refrigerator for $8.00. Thus, the total cost of the "tools of the trade" Plaintiff Altamirano was required to purchase as a delivery worker was approximately $709.

*Plaintiff Cristobal Bravo*

21

139.   Plaintiff Bravo was employed by Defendants from approximately November 2009 until March 29, 2012.

140.   During the course of his employment with Defendants, Plaintiff Bravo was stationed at the York Avenue and First Avenue locations.

141.   Defendants ostensibly employed Plaintiff Bravo as a delivery worker.

142.   However, Plaintiff Bravo was also required to perform additional duties including preparing salads, assisting the dough maker by bringing the ingredients he needed, making and weighing dough balls, making pizza sauce, sweeping and mopping, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, cutting dough squares for sicilian pizza, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, and receiving and stocking deliveries around the basement.

143.   Although Plaintiff Bravo was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

144.   Plaintiff Bravo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

145.   Plaintiff Bravo's work duties required neither discretion nor independent judgment.

146.   Throughout his employment with defendants, Plaintiff Bravo regularly worked more than 40 hours per week.

147.   From approximately November 2009 until March 2010, Plaintiff Bravo worked from approximately 10:30 a.m. until on or about 9:00 p.m. six days a week at the York Avenue location(typically 63 hours per week).

148.   From approximately March 2010 until May 2011, Plaintiff Bravo worked from approximately 10:30 a.m. until 9:00 p.m. six days a week at the First Avenue location (typically 63 hours per week).

149.   From approximately June 2011 until March 29, 2012, Plaintiff Bravo worked from approximately 10:30 a.m. to 12:00 a.m. on Mondays, from 12:00 p.m. to 12:00 a.m. on Sundays and Wednesdays, from 3:00 p.m. to 12:00 a.m. on Thursdays, from 10:30 a.m. to 10:00 p.m. on Fridays and from 12:00 p.m. to 3:00 a.m. on Saturdays at the First Avenue location (typically 73 hours per week).

150.   Throughout his employment with Defendants, Plaintiff Bravo was paid in cash.

151.   From approximately November 2009 until June 2011, Plaintiff Bravo was paid $250 per week.

152.   From approximately July 2011 until March 29,2012, Plaintiff Bravo was paid at the rate of $4.65 per hour for the first 40 hours and $7.00 per hour for all hours worked over 40 in a week.

153.   Defendants did not grant Plaintiff Bravo any breaks or meal periods of any kind.

154.   Plaintiff Bravo was never notified by Defendants that his tips would be included as an offset for wages.

155.   Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Bravo 's wages.

156.   Defendants would withhold Plaintiff Bravo's tips until the end of the week and then would not pay him the full amount of tips he had earned.

157.   No notification, either in the form of posted notices, or other means, was given to Plaintiff Bravo regarding overtime and wages under the FLSA and NYLL.

158.   Prior to June 2011, Plaintiff Bravo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

159.   From July 2011 to March 2012, Defendants required Plaintiff Bravo to write on a piece of paper the times of arrival and departure.

160.   Defendants did not provide Plaintiff Bravo with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

161.   Instead, in order to disburse his paycheck, Defendants required Plaintiff Bravo to sign a document the contents of which were unknown to him.

162.   Defendants required Plaintiff Bravo to purchase "tools of the trade" with his own funds—including three bikes (one for $250 and two for $150 each), and a lock and key set for $65.00. Thus, the total cost of the "tools of the trade" Plaintiff Bravo was required to purchase as a delivery worker was approximately $635.

*Plaintiff Levi Gallardo*

163.   Plaintiff Gallardo was employed by Defendants from approximately April 2010 until July 2011.

164.   Throughout his employment with Defendants, Plaintiff Gallardo was stationed at the First Avenue location.

165.   Defendants employed Plaintiff Gallardo as a pizza maker.

166.   Plaintiff Gallardo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

167.   Plaintiff Gallardo's work duties required neither discretion nor independent judgment.

168.   Throughout his employment with defendants, Plaintiff Gallardo regularly worked more than 40 hours a week.

169.   From approximately April 2010 until July 2010, Plaintiff Gallardo typically worked between 66 to 75 hours per week at the First Avenue location.

170.   From approximately august 2010 until July 2011, Plaintiff Gallardo worked from approximately 9:00 a.m. to 9:00 p.m. on Wednesdays, Thursdays, Fridays and Saturdays and from 9:00 a.m. to 12:00 a.m. on Tuesdays at the First Avenue location (typically 63 hours per week).

171.   Throughout his employment with defendants, Plaintiff Gallardo was paid his wages in cash.

172.   From approximately April 2010 until January 2011, Plaintiff Gallardo was paid at the rate of $12.00 per hour.

173.    From approximately February 2011 until July 2011, Plaintiff Gallardo was paid at a rate of $14.00 per hour; however, Defendants did not pay Plaintiff Gallardo for all the hours he had worked and he complained to the owner on three occasions but the owner only paid him a part of the unpaid wages.

174.    Defendants did not grant Plaintiff Gallardo any breaks or meal periods of any kind.

175.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Gallardo regarding overtime and wages under the FLSA and NYLL.

176.    Prior to June 2011, Plaintiff Gallardo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

177.    After June 2011, Defendants required Plaintiff Gallardo to write on a piece of paper the times of arrival and departure.

178.    Defendants did not provide Plaintiff Gallardo with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

179.    Instead, in order to disburse his paycheck after June 2011, Defendants required Plaintiff Gallardo to sign a document the contents of which were unknown to him.

*Plaintiff Lugo Romano ("Plaintiff Romano")*

180.    Plaintiff Romano was employed by Defendants from approximately April 2009 until September 18, 2011.

181.   Throughout his employment with Defendants, Plaintiff Romano was stationed at the Ninth and York Avenue locations.

182.   Defendants ostensibly employed Plaintiff Romano as a delivery worker.

183.   However, Plaintiff Romano was also required to perform additional duties including preparing Salads, assisting the dough maker by bringing the ingredients he needed, making and weighing dough balls, making pizza sauce, sweeping and mopping, cutting peppers, Sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, cutting dough squares for sicilian pizza, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, receiving and stocking deliveries around the basement, and transporting ice, cheese sauce and other items from the York Avenue location to the First Avenue location.

184.   Although Plaintiff Romano was ostensibly employed as a delivery worker, he spent more than 4 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

185.   Plaintiff Romano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

186.   Plaintiff Romano's work duties required neither discretion nor independent judgment.

187.   Throughout his employment with defendants, Plaintiff Romano regularly worked more than 40 hours a week.

27

188.    From approximately April 2009 until December 2010, Plaintiff Romano worked from 10:00 a.m. to 11:00 p.m. Mondays through Thursdays, from 10:00 a.m. to 1:00 a.m. on Fridays, from 11:00 a.m. to 11:00 p.m. on Saturdays and, approximately twice per month, an additional three hours to assist on busy days at the Ninth Avenue location (typically 79 to 82 hours per week).

189.    From approximately January 2011 until September 18, 2011, Plaintiff Romano worked from 10:00 a.m. to 9:00 p.m. on Sundays, Mondays and Tuesdays, from 10:00 a.m. to 11:00 p.m. on Thursdays, from 3:00 p.m. to 12:00 a.m. on Fridays and from 10:00 a.m. to 12:00 a.m. on Saturdays at the York Avenue location (typically 69 hours per week).

190.    Throughout his employment with Defendants, Plaintiff Romano was paid his wages in cash.

191.    From approximately April 2009 until June 2011, Plaintiff Romano was paid $300 per week.

192.    From approximately June 2011 until September 18, 2011, Plaintiff Romano was paid $4.65 per hour for the first 40 hours and $7.00 per hour for all hours worked over 40 in a week.

193.    Defendants did not grant Plaintiff Romano any breaks or meal periods of any kind.

194.    Plaintiff Romano was never notified by Defendants that his tips would be included as an offset for wages.

195.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Romano's wages.

196. Defendants would withhold Plaintiff Romano's tips until the end of the week and then would not pay him the full amount of tips he had earned.

197. No notification, either in the form of posted notices, or other means, was given to Plaintiff Romano regarding overtime and wages under the FLSA and NYLL.

198. Prior to June 2011, Plaintiff Romano was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

199. From July 2011 to September 18, 2011, Defendants required Plaintiff Romano to write on a piece of paper the times of arrival and departure.

200. Defendants did not provide Plaintiff Romano with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

201. Instead, in order to disburse his paycheck, Defendants required Plaintiff Romano to sign a document the contents of which were unknown to him.

202. Defendants required Plaintiff Romano to purchase "tools of the trade" with his own funds—including three bicycles (one for $120, one for $180 and one for $150), and a chain and lock for $65. Thus, the total cost of the "tools of the trade" Plaintiff Romano was required to purchase as a delivery worker was approximately $515.

*Plaintiff Pablo Najera "Plaintiff Pablo"*

203. Plaintiff Pablo was employed by Defendants from approximately September 2011 until November 2011.

29

204.    Throughout his employment with Defendants, Plaintiff Pablo simultaneously worked at the York Avenue, First Avenue and Ninth Avenue locations.

205.    Defendants employed Plaintiff Pablo as a pizza maker, counter attendant, telephone order taker and cashier.

206.    Plaintiff Pablo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

207.    Plaintiff Pablo's work duties required neither discretion nor independent judgment.

208.    Throughout his employment with defendants, Plaintiff Pablo regularly worked more than 40 hours a week.

209.    From approximately September 2011 until November 2011, Plaintiff Pablo worked from approximately 10:00 a.m. to 10:30 p.m. on Mondays at the York Avenue location; from 10:30 a.m. to 10:00 p.m. on Tuesdays and Thursdays and from 5:00 p.m. to 3:00 a.m. on Fridays at the First Avenue location; and from 11:00 a.m. to 10:00 p.m. on Saturdays and Sundays at the Ninth Avenue location (typically 65.5 hours per week).

210.    Throughout his employment with defendants, Plaintiff Pablo was paid his wages in cash.

211.    From September 2011 to November 2011, Plaintiff Pablo was paid at a rate of $10 per hour.

212.    Defendants did not grant Plaintiff Pablo any breaks or meal periods of any kind.

213.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Pablo regarding overtime and wages under the FLSA and NYLL.

214.   From September 2011 to November 2012, Defendants required Plaintiff Pablo to write on a piece of paper the times of arrival and departure.

215.   Defendants did not provide Plaintiff Pablo with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

216.   Instead, in order to disburse his paycheck, Defendants required Plaintiff Pablo to sign a document the contents of which were unknown to him

### Defendants' General Employment Practices

217.   At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

218.   Plaintiffs have been victims of Defendants' common policy and practices that violate their rights under the FLSA and the Labor Law by *inter alia*, willfully denying them tips that they earned.

219.   At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

220.   Defendants have engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

221.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

222.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

223.    Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

224.    Prior to June 2011, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

225.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

226.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

227.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

228.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

229.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL by depriving delivery workers on tips earned during the course of their employment.

230.    Plaintiffs have been victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by *inter alia*, willfully denying them their earned tips and not paying them the wages they were owed for the hours they had worked.

231.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

232.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This pattern, practice and/or policy included depriving delivery workers of a portion of the tips earned during the course of employment.

233.    Defendants unlawfully misappropriated charges purported to be gratuity, received by Plaintiffs and other delivery workers in violation of New York Labor Law § 196-d (2007).

234.    Under the FLSA and the NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

33

235.   Moreover, at all times Defendants required Plaintiffs who were tipped employees such as delivery workers to perform the jobs of multiple employees in addition to their primary responsibilities. These additional, non-related, and non-tipped duties occupied more than two hours of each Plaintiff's workday.

236.   Defendants paid these Plaintiffs at the lowered tip-credited rate, however Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

237.   Many Plaintiffs were employed ostensibly as delivery workers (tipped employees) by Defendants, although their actual duties included greater or equal time spent in non-delivery, non-tipped functions such as preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and receiving and stocking deliveries around the basement.

238.   New York State regulations provide that an employee cannot be classified as a tipped employee "on any day.. in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56 (e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

239.   Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated occupations with duties including transportation of items between store locations, maintenance and cleaning, food preparation, receiving and storing deliveries, dishwashing and kitchen assistance. While performing these duties, Plaintiffs did not receive tips; therefore, they constitute non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

240.   Since Plaintiffs spent as much as half or more of their workday in non-tipped, non-delivery functions, Defendants were not entitled to take a tip credit with respect to their wages.

241.   In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate for all the hours they worked.

242.   Defendants employed Plaintiffs as delivery workers and required them to provide their own locks, chains and bicycles, and refused to compensate them or reimburse them for these expenses.

243.   Defendants did not provide Plaintiff with any break periods.

*FLSA Collective Action Claims*

244.   On information and belief, there are over sixty current and former employees that are similarly situated to Plaintiffs who have been denied minimum wage and overtime compensation while working for Defendants.

35

245. The named Plaintiffs are representative of these other workers and are acting on behalf of their interests as well as their own interest in bringing this action.

246. Similarly situated former and current employees are readily identifiable and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216 (b). Unless the Court promptly issues such notice, persons similarly situated to the Plaintiffs, who have been unlawfully deprived of minimum wage and overtime pay in violation of the Fair Labor Standards Act, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

### FIRST CAUSE OF ACTION
### Violation of the Minimum Wage Provisions of the FLSA

247. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

248. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (d).

249. At all relevant times, Defendants were engaged in commerce or in an industry or activity affecting commerce.

250. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r).

251. Defendants intentionally failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206 (a).

252. Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255 (a).

253.   Plaintiffs have been damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### Violation of the Overtime Provisions of the FLSA

254.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

255.   Defendants intentionally failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a) (1).

256.   Defendants'' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255 (a).

257.   Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Violation of the New York Minimum Wage Act

258.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

259.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

260.   Defendants willfully failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of the New York Minimum Wage Act and regulations.

261.   Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

262.   Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

263.   Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Violation of the Overtime Provisions of the New York State Labor Law

264. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

265. Defendants willfully failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 et seq. and regulations of the New York State Department of Labor.

266. Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

267. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

268. Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Spread of Hours Wage Order of the New York Commissioner of Labor

269. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

270. Defendants failed to pay Plaintiffs one additional hour pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten in violation of N.Y. Lab. Law § 190 et seq. and § 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, §137-1.7 and 137-3.11.

271. Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

272.    Defendants' failure to pay Plaintiffs an additional hour pay for each day Plaintiffs' spread of hours exceeded ten was willful within the meaning of N.Y. Lab. Law § 663.

273.    Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs and the FLSA class members;

(f)    Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

39

(g)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

(k)     Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA Class members;

(m)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of

hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs and the FLSA class members pre-judgment and post-

judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA class members the expenses incurred in this

action, including costs and attorney's fees; and

(q)     All such other and further relief as the Court deems just and proper.


Dated: New York, New York
       April 20, 2012

                            MICHAEL FAILLACE & ASSOCIATES, P.C.

                            By: _____
                                Michael Faillace [MF-8436]
                                110 East 59th Street, 32nd Floor
                                New York, New York 10022
                                (212) 317-1200