```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
CRISTOBAL BRAVO, LEVI GALLARDO, LUGO   :      12cv3133 (DLC)
ROMANO, PABLO NAJERA, JOSE LUIS        :      14cv4563 (DLC)
ORTEGA, ANASATCIO ANTOLIN, LUIS        :      15cv4069 (DLC)
ANTONIO CANIZAL, FERNANDO ARRELLANOS,  :      15cv10062 (DLC)
LUIS NAJERA, ADALBERTO NAVARRO FLORES, :
JUAREZ LUNA, RODOLFO RUIZ BRIONES,     :      OPINION AND ORDER
MANUEL MONTIEL LOPEZ, FERNANDO         :
RODRIGUEZ, CLAUDIO ARIAS, and IVAN     :
BENITEZ,                               :
                                       :
                  Plaintiffs,          :
                                       :
            -v-                        :
                                       :
LANA SHAMAILOV,                        :
                                       :
                  Defendant.           :
                                       :
-------------------------------------- X
APPEARANCES

For the plaintiffs:

Joshua S. Androphy
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 2540
New York, NY 10165

For the defendant:

Benjamin B. Xue
Xue & Associates, P.C.
1001 Avenue of the Americas, 11th Floor
New York, NY 10018
```

DENISE COTE, District Judge:

In these consolidated cases, former employees of Gotham

Pizza have brought claims under the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL") against Gotham Pizza[1] and two individuals: Michael Shamailov and Lana Shamailov.  At a trial held solely on the issue of whether Lana Shamailov was an "employer" of certain of the plaintiffs, the jury returned a verdict in favor of the plaintiffs.  Lana Shamailov has filed a motion for judgment as a matter of law or for a new trial.  For the reasons that follow, the motion is denied.

## Procedural History

These consolidated cases were filed on April 20, 2012; June 24, 2014; May 27, 2015; and December 28, 2015.  Each of them involves claims by employees of Gotham Pizza restaurants for violations of federal and state labor laws.  By Order of November 20, 2015, the actions were consolidated for purposes of trial with 12cv3133 designated as the lead case.  On April 20, 2016, the cases were reassigned to this Court.  By Order of April 21, these matters were scheduled for trial on July 5.  By Order of July 1, the Court ordered that, pursuant to Federal Rule of Civil Procedure 42(b), and because of the number of plaintiffs and complexity of the claims, the trial scheduled for

---

[1] The four Gotham Pizza restaurants are 1443 York Gotham Pizza ("York Gotham Pizza"), 1667 First Gotham Pizza ("First Gotham Pizza"), 852 Eighth Gotham Pizza ("Eighth Gotham Pizza"), and 144 Ninth Gotham Pizza ("Ninth Gotham Pizza").

July 5 would proceed with respect to only five of the then 22 plaintiffs.  The Court further determined that the remaining plaintiffs' claims would be tried at subsequent trials on August 23, September 19, and November 14.

The first trial was held from July 5 until July 8.  Based on the plaintiffs' election, the first trial concerned the claims of plaintiffs Prisco Najera, Israel Fuentes, Eleuterio Alonzo, Wilfredo Ramirez, and Aureliano Tapia.  The Court granted the defendants' motion for a directed verdict as to the claims against Lana Shamailov because there had been insufficient evidence, as a matter of law, that she acted as the employer of the five plaintiffs whose claims had been tried.  On July 8, the jury returned a verdict in favor of the plaintiffs against the other defendants, which included the four Gotham Pizza corporate entities and Michael Shamailov.

On August 4, the defendants submitted a letter indicating that they and their counsel would not appear at the subsequent trials scheduled for August 23, September 19, and November 14. On August 8, the Court issued an Order to Show Cause requiring the defendants to show why a default should not be entered against them with respect to the remaining plaintiffs' claims. An Order to Show Cause hearing was held August 12.  At the hearing, counsel for the defendants informed the Court that the

3

Gotham Pizza corporate entities and Michael Shamailov did not oppose entry of a default against them, but that Lana Shamailov would continue to defend these actions only on the ground that she is not the employer of any of the plaintiffs.  By Order of August 12, a default was entered against the Gotham Pizza defendants and Michael Shamailov in favor of the remaining 17 plaintiffs.[2]  The Court required the parties to make submissions regarding the calculation of damages.  After addressing the defendants' objections to the plaintiffs' damages calculations,[3] the Court entered judgments under Federal Rule of Civil Procedure 54(b) with respect to the remaining 15 plaintiffs on August 24, September 23, and October 20.[4]

---

[2] These plaintiffs are Cristobal Bravo, Levi Gallardo, Lugo Romano, Pablo Najera, Jose Luis Ortega, Anasatcio Antolin, Luis Antonio Canizal, Fausto Ramales, Fernando Arrellanos, Luis Najera, Adalberto Navarro Flores, Israel Juarez Luna, Rodolfo Ruiz Briones, Manuel Montiel Lopez, Fernando Rodriguez, Claudio Arias, and Ivan Benitez.

[3] By Order of September 20, the Court held that (1) the plaintiffs shall be awarded liquidated damages under both the FLSA and NYLL, (2) that the declarations submitted by the plaintiffs were adequate to fix their entitlement to damages, and (3) that time sheets submitted in advance of the first trial are not a basis to challenge the declarations submitted by the plaintiffs.

[4] The claims brought by Fausto Ramales and Adalberto Navarro Flores were dismissed for failure to prosecute by Order of September 20.

A second trial was held from August 23 until August 24 on the issue of whether Lana Shamailov was an employer of 17 of the plaintiffs.  If Lana Shamailov is an employer of those plaintiffs, she will be jointly and severally liable for the judgments entered against the other defendants in favor of those 17 plaintiffs.[5]  On August 24, the jury returned a verdict in favor of the 17 plaintiffs, finding that Lana Shamailov was the employer of each of them.  At the conclusion of the trial, the defendant made a motion for judgment as a matter of law or for a new trial.  The Court reserved decision and set a briefing schedule on that motion.  The motion became fully submitted on October 13.

## Evidence Presented at Trial

The following is a summary of the evidence presented at trial pertinent to the instant motion.

## I.   Gotham Pizza Corporate Documents

All corporate records received at trial identified Lana Shamailov as the sole owner of each of the four Gotham Pizza entities.  For each of the four Gotham Pizza entities, tax returns state that Lana Shamailov is the sole "shareholder" of

---

[5] Lana Shamailov will not be liable to Fausto Ramales or Adalberto Navarro Flores because their claims were subsequently dismissed.

Gotham Pizza.  Moreover, two trademark applications filed by Gotham Pizza with the United States Patent and Trademark Office list Lana Shamailov as the sole "owner" of Gotham Pizza.

## II.  Employees' Testimony

Three plaintiffs -- Cristobal Bravo ("Bravo"), Lugo Romano ("Romano"), and Luis Antonio Canizal ("Canizal") -- testified. They worked over the course of their employment at three of the four Gotham Pizza locations.  The employees testified that they had seen Lana Shamailov at Gotham Pizza restaurants; that during these visits, Lana Shamailov spoke with manager Cenan Memedi[6] and owner Michael Shamailov, apparently about the business of the pizzerias; that the employees were instructed by Memedi to keep the restaurants particularly clean in anticipation of Lana Shamailov's visits; and that Lana Shamailov had fired at least two employees.  According to Bravo, when Lana Shamailov visited the pizzeria, the employees were instructed by Memedi to "always be working" so that "they would see us working and we couldn't get fired."

Romano testified that when Lana Shamailov visited the pizzeria she sat with Michael Shamailov and discussed the business of Gotham Pizza during these meetings.  Lana Shamailov

---

[6] Cenan Memedi is also known as "Kenny," and was referred to as such by several of the witnesses during the trial.

would also direct Memedi to have the employees clean any part of the pizzeria that was dirty.  Romano understood that if Lana Shamailov saw that the pizzeria was dirty, there was a possibility that she would fire the employee(s) responsible. Romano witnessed Lana Shamailov fire two employees at Gotham Pizza.  In the first such instance, Romano saw Lana Shamailov fire an employee at Ninth Gotham Pizza after she caught him talking on a telephone despite the pizzeria being dirty.  Romano stated that Lana Shamailov fired the employees by pointing to the employee with her finger and instructing Memedi to fire the employee.  Romano also explained that Lana Shamailov used Memedi to fire the employees because she herself did not speak Spanish. Romano also testified about complaints that he made to Memedi concerning his pay.  When Romano complained to Memedi, Memedi promised that he would speak to both Michael Shamailov and Lana Shamailov about Romano's complaint.

Canizal testified that he saw Lana Shamailov at Gotham Pizza approximately three times a month.  During her visits, Canizal saw Lana Shamailov eat pizza but she rarely spoke to anyone.  Canizal only spoke with Lana Shamailov once, when Lana Shamailov instructed Canizal to take out the trash.  Canizal stated that he understood from other employees that when Lana Shamailov visited the pizzeria, it was important to keep the

premises clean because she was one of the owners of the
business.  Canizal described a time in which Lana Shamailov
caught one of the employees, a man named Victor, talking on the
telephone at Ninth Gotham Pizza and she instructed Memedi to
fire that employee.  According to Canizal, he saw Victor talking
on the telephone, and when Lana Shamailov arrived, she became
upset that Victor was on the telephone.  This occurred in the
basement of the pizzeria.

**III.  Defendants' Testimony**

The testimony of Lana Shamailov, Michael Shamailov, and
Memedi described Lana Shamailov as having little or no
involvement in the business of Gotham Pizza.  Lana Shamailov
testified that the first time she had even heard of Gotham Pizza
was when she was deposed in this action in September 14, 2014,
approximately seven years after her husband Michael Shamailov
founded the company, even though they had been married for the
entire time Gotham Pizza has been in existence.  She testified
that (1) Michael Shamailov never mentioned the name of the
business to her, and the name never came up in conversation, (2)
that she was unaware, until her deposition, that Michael
Shamailov had listed her as the shareholder of Gotham Pizza, (3)
that she had never visited any of the pizzerias, and (5) that
she is a stay-at-home mother, and has never worked in a pizzeria

8

or anywhere else.

Michael Shamailov testified that he had listed Lana Shamailov as the sole shareholder of Gotham Pizza without her knowledge or consent because he wanted the business to be under Lana Shamailov's name in case anything were to happen to him.[7] He explained that he made this decision after he was treated for lymphoma and was very ill. He denied that Lana Shamailov ran the business, however, or that she has any involvement in hiring, firing, or supervising employees, and he testified that Lana Shamailov never visited any of the Gotham Pizza restaurants. He suggested that the employees who claimed to have seen Lana Shamailov at the Gotham Pizza pizzerias may have confused Lana Shamailov for Jennifer Shamailov, who is Michael Shamailov's sister, and who looks "like a twin of [Lana Shamailov,] same height, same complexion, same hair color."[8]

Memedi, who worked as a manager at Gotham Pizza, began working in that position when the first pizzeria opened in 2007.

---

[7] During his deposition, Michael Shamailov was asked why he listed Lana Shamailov as the shareholder of Gotham Pizza. He responded: "It's just the way I wanted it to be . . . No particular reason." Michael Shamailov explained this inconsistency by stating that he did not want to disclose details about his health during the deposition.

[8] Lana Shamailov did not call Jennifer Shamailov as a witness.

9

Memedi testified that Lana Shamailov never entered any of the Gotham Pizza pizzerias, nor did she have any involvement in the operation of the business.[9]  He further testified that Lana Shamailov never fired nor directed him to fire any employee.

Memedi no longer works at Gotham Pizza, and is currently involved in litigation against both Michael Shamailov and Lana Shamailov.[10]  In that litigation, Memedi claims that he is entitled to a share of the profits of Gotham Pizza.  When asked why he sued Lana Shamailov regarding a business dispute with Gotham Pizza if she has no involvement with the business, Memedi responded that he sued Lana Shamailov on the advice of his lawyer but that he did not consider her to be an owner of Gotham Pizza.

Memedi stated that counsel for the plaintiffs at Michael

---

[9] Although Memedi testified that Lana Shamailov never entered any of the Gotham Pizza restaurants, he later contradicted this testimony when he stated that Lana Shamailov "goes and eats a slice of pizza," and that she did exchange pleasantries with Memedi when she visited the pizzeria.

[10] Michael Shamailov was asked by plaintiffs' counsel about whether he believed Memedi was a "compulsive liar."  Although Michael Shamailov testified that he did not believe Memedi was a liar, he admitted that he had called Memedi a "compulsive liar" when he was deposed in 2014.  He explained that he "had said a lot of bad things about [Memedi] at that time because [he] was very angry at him."  Michael Shamailov then admitted that he believed Memedi to be a liar but would not characterize him as "compulsive."

Faillace & Associates, P.C. encouraged him to testify falsely regarding Lana Shamailov's involvement with Gotham Pizza. According to Memedi, lawyers at the office of Michael Faillace offered him something in exchange for his false testimony, but he refused to say what had been promised.

Both Michael Shamailov and Memedi were asked whether either of them had a policy prohibiting employees from using their telephones while at work.  Michael Shamailov testified that there was no rule against using telephones:

> Well, if a customer is literally at the counter trying
> to order pizza and they're on their cell phone and
> saying to the customer, can you hold on, I'm on the
> phone, I think that would be counted as a wrong way of
> using your phone.  But, if they used it on their own
> breaks or discreetly, we never said anything about
> that.

Memedi also had the same understanding regarding the use of telephones by employees.

## Discussion

### I.  Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a

motion for judgment as a matter of law."  The standard to grant a Rule 50 motion is high:  the motion will be granted "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been <u>compelled</u> to accept the view of the moving party." <u>MacDermid Printing Sols. LLC v. Cortron Corp.</u>, 833 F.3d 172, 180 (2d Cir. 2016) (citation omitted).  The burden on the moving party is "particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant."  <u>Cash v. Cty. of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011) (citation omitted).  In that circumstance,

> a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.

<u>Id.</u> (citation omitted).  Jury verdicts should be disturbed with infrequency, and only in egregious cases.  <u>Id.</u>

An employer is defined by the FLSA as including "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  New York law defines "employer" as any individual or business "employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. Law § 190(3).  The definition of "employed"

is that a person is "permitted to work."  N.Y. Lab. Law §
651(5); Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir.
2013).

Under either law,[11] an individual is an "employer" if she
possesses the power to control, in whole or in part, a company's
operations in a manner that relates to the employment of the
company's employees.  Irizarry, 722 F.3d at 109.  In making this
determination, the jury considers the totality of the
circumstances that constitute the economic reality of the
employee/employer relationship.  Graziadio v. Culinary Inst. of
Am., 817 F.3d 415, 422 (2d Cir. 2016).  Ownership, or a stake in
the company, standing alone, is insufficient to establish that
an individual is an employer unless the owner also has some
involvement in the company's relationship with its employees,
such that she has "operational control" over the employees.
Irizarry, 722 F.3d at 110-11.

Factors that bear on the economic realities of the
employer/employee relationship include, but are not limited to,
whether the defendant has the authority to (1) hire and fire
employees; (2) supervise and control employees' work schedules

---

[11] Courts in this circuit treat the definition of employer under
the FLSA and the NYLL as identical.  See, e.g., Severin v.
Project OHR, Inc., No. 10cv9696 (DLC), 2011 WL 3902994, at *6
(S.D.N.Y. Sept. 2, 2011).

or conditions of employment; (3) determine the rate and method of payment for employees; and (4) maintain employment records for employees.  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  No one of these factors standing alone is dispositive.  Id.  Whether an individual is an "employer" is not "confined to a narrow legalistic definition," and the jury may consider any relevant evidence that it finds pertinent to the economic reality of the employer/employee relationship.  Id.

Viewing the evidence in the light most favorable to the plaintiffs, there was not "a complete absence of evidence supporting the verdict," nor was the jury's verdict "the result of sheer surmise and conjecture."  Cash, 654 F.3d at 333 (citation omitted).  The jury had a reasonable basis to conclude that Lana Shamailov exercised sufficient control over the employees of Gotham Pizza that, given the totality of the circumstances, she was their employer for purposes of the FLSA and NYLL.

**A. Credibility of Witnesses**

Of primary importance to this motion is the jury's determinations as to the credibility of the witnesses.  It is the jury's role to determine whether a witness is credible and to decide what weight to give to that witness's testimony.  Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 112-13 (2d Cir.

14

2015).  In this trial, the jury was presented with two different descriptions of Lana Shamailov's involvement with Gotham Pizza. Bravo, Romano, and Canizal all testified that Lana Shamailov visited the Gotham Pizza pizzerias, that the employees of those restaurants considered Lana Shamailov to be their boss and did extra cleaning when she was present, and both Romano and Canizal described how Lana Shamailov ordered the firing of an employee. Memedi, Lana Shamailov, and Michael Shamailov testified that Lana Shamailov never visited any of the Gotham Pizza pizzerias and that she had no involvement in the business of Gotham Pizza. Lana Shamailov testified that she had never even heard the name Gotham Pizza until she was deposed in connection with this litigation.  The jury was entitled to determine which of these accounts it believed, and the jury determined that the plaintiffs' testimony was more credible.

The jury's determination as to the credibility of the witnesses at trial was reasonable.  The plaintiffs Bravo, Romano, and Canizal exhibited a truthful demeanor and did not exaggerate their testimony.[12]  Memedi, on the other hand,

---

[12] For example, Bravo and Romano testified that they did not know what Lana Shamailov said to Memedi when she visited the pizzerias.  All three of the plaintiffs testified that Memedi and Michael Shamailov, rather than Lana Shamailov, supervised them on a day-to-day basis.

exhibited a nervous demeanor on the stand, and testified in a manner suggesting he had rehearsed his statement beforehand. Lana Shamailov's testimony was also not credible.  She testified that for the seven years in which Gotham Pizza has been in business, she had never even heard the name Gotham Pizza, not even in passing.  Given that Gotham Pizza is her husband's primary business, this testimony is, at the very least, suspect. Finally, the jury was entitled to disbelieve Michael Shamailov's testimony.  He contradicted his previous deposition.  Moreover, his assertion that the employees may have mistaken Lana Shamailov for his sister, Jennifer Shamailov, was not credible. The jury was, therefore, entitled to reject the testimony of Memedi, Lana Shamailov, and Michael Shamailov and accept that of Bravo, Romano, and Canizal.

Lana Shamailov's argument to the contrary is without merit. She argues that Bravo, Romano, and Canizal fabricated their testimony during the trial.  In support of this argument, she identifies several purported inconsistencies in the plaintiffs' testimony.  As an initial matter, it is for the jury to decide whether a witness has testified credibly or not.  Wiercinski, 787 F.3d at 113.  The testimony of the witnesses must be viewed in the light most favorable to the non-moving party.  MacDermid Printing Sols. LLC, 833 F.3d at 180.  None of the purported

16

inconsistencies undermines the jury's verdict.

First, Lana Shamailov contends that Romano fabricated his account that Lana Shamailov fired two employees at Gotham Pizza because (1) Romano testified that he was too busy to overhear others' conversations and could not have known whether Lana Shamailov directed Memedi to fire anyone, and (2) Romano does not speak English and therefore could not have known what Lana Shamailov said to Memedi.  Romano, however, explained that while he did not know what Lana Shamailov said, he understood from her actions and the situational context that Lana Shamailov had ordered Memedi to fire the employee.  Specifically, Romano testified that "[t]he lady is present here.  She pointed them [sic] with her finger, and she sent Kenny to tell them they could no longer work there."  Romano also testified that Lana Shamailov "had the habit of using her finger to point at" employees rather than speak to them.  Based on this testimony, the fact that Romano did not speak English or overhear what Lana Shamailov said would not preclude the jury from believing Romano's account that Lana Shamailov had ordered Memedi to fire the employee.

Second, Lana Shamailov argues that Romano fabricated his testimony because he admitted on the stand that he had never seen Lana Shamailov prior to the day of the trial.  During

17

cross-examination, counsel for Lana Shamailov asked Romano: "And, in fact, you never seen [sic] her before today; right?" Romano responded "Yes."  Read in isolation, it is unclear whether Romano was stating 'yes, I have never seen her before today,' or 'yes, I have seen her before today.'  Lana Shamailov's counsel did not ask a follow-up question to clarify Romano's response.  But prior to this exchange, Romano had testified extensively that he had seen Lana Shamailov numerous times at Gotham Pizza pizzerias, and that he had witnessed her fire two employees and speak to Memedi.  It was reasonable for the jury to conclude that Romano was reiterating that he had indeed seen Lana Shamailov prior to that day.[13]

Third, Lana Shamailov argues that Canizal described his account of Lana Shamailov firing an employee -- Victor -- as a "theory," and thus it is too speculative to sustain the jury's verdict.  Canizal testified that it was his "theory" that Lana Shamailov fired an employee through Memedi.  The term used by Canizal is not dispositive.  Canizal described the following facts: that he saw another employee talking on the telephone;

---

[13] Several of the answers given by the plaintiffs in response to defense counsel were ambiguous due to the manner in which counsel phrased his questions, and because of the use of a Spanish interpreter.  In this particular instance, the Court understood Romano to be saying that he had seen Lana Shamailov prior to the trial.

that Lana Shamailov arrived at the pizzeria and saw the employee
speaking on the telephone; that Lana Shamailov spoke to Memedi;
and that Memedi fired the employee soon thereafter.  This
account was corroborated by Romano, who similarly described how
Lana Shamailov fired an employee by pointing to the employee,
and that Memedi fired the employee soon thereafter.  The jury
could reasonably infer from this evidence that Lana Shamailov
had the power to fire employees at Gotham Pizza.

**B. Sufficiency of the Evidence**

Sufficient evidence was presented during the trial for a
reasonable juror to conclude that Lana Shamailov was an employer
of the employees of Gotham Pizza.  First, and most importantly,
Romano and Canizal testified that Lana Shamailov fired an
employee of Gotham Pizza by directing that Memedi fire the
employee.  Romano described a second time that Lana Shamailov
fired an employee.  Notably, Romano stated that these two
incidents were the only time he ever witnessed an employee being
fired.

Second, there was sufficient evidence for a juror to
conclude that Lana Shamailov exercised operational control over
the employees of Gotham Pizza.  Bravo, Romano, and Canizal all
testified that they saw Lana Shamailov visit Gotham Pizza
pizzerias, and each considered her to be his boss.  Romano

19

stated that Lana Shamailov directed Memedi to order the
employees to clean the pizzeria.  Romano also understood that,
if the pizzeria was not sufficiently clean, there was a chance
Lana Shamailov would tell Memedi to fire him.  Romano also
testified that, on at least one visit to the pizzeria, Lana
Shamailov discussed the business of Gotham Pizza with Memedi.
According to Romano, when he complained to Memedi about his pay,
Memedi promised to raise the issue with either Michael Shamailov
or Lana Shamailov, suggesting that both of them had the
authority to address issues relating to the employees' pay.
Canizal testified that Lana Shamailov ordered him to take out
the trash.

Third, the jury was presented with other evidence that,
while not dispositive on its own, lends credibility to the
testimony of Bravo, Romano, and Canizal.  Most importantly, Lana
Shamailov is the sole shareholder of all four Gotham Pizza
corporations.  She is also listed as the owner of Gotham Pizza
on trademark applications and on submissions to the New York
Department of State.  Although Michael Shamailov testified that
he listed Lana Shamailov as the sole shareholder without her
knowledge or consent, the jury was entitled to reject this

testimony.[14]  As the sole shareholder of Gotham Pizza, Lana
Shamailov had the legal authority to fire and supervise
employees in the manner that Bravo, Romano, and Canizal
described.  Second, Memedi sued Lana Shamailov concerning a
business dispute with Gotham Pizza.  Memedi was a manager at
Gotham Pizza from 2007 until the time he was fired.  He likely
would have been well aware of whether Lana Shamailov functioned
as an owner of Gotham Pizza, which suggests that he included
Lana Shamailov as a defendant in his lawsuit because Lana
Shamailov acted as an owner of the business.

In sum, there was sufficient evidence presented at trial
for the jury to conclude that Lana Shamailov was aware that she
was the shareholder of Gotham Pizza and that she did exercise

---

[14] Lana Shamailov contends that, in the event the jury
disbelieved the testimony of Memedi, Michael Shamailov, and
herself, then the jury would be permitted to disregard that
testimony but would not be permitted to draw the inference that
the opposite of that testimony is true.  This is not a correct
statement of law.  It has long been recognized that if a juror
believes a witness has lied, the juror may properly conclude
that the opposite of the testimony is true.  Dyer v. MacDougall,
201 F.2d 265, 269 (2d Cir. 1952) (Learned Hand, J.) (the fact a
witness has lied "may satisfy the tribunal, not only that the
witness' testimony is not true, but that the truth is the
opposite of his story; for the denial of one, who has a motive
to deny, may be uttered with such hesitation, discomfort,
arrogance or defiance, as to give assurance that he is
fabricating, and that, if he is, there is no alternative but to
assume the truth of what he denies.").

operational control over the employees.  The jury could
reasonably conclude that Lana Shamailov met with Memedi
concerning the business of Gotham Pizza, that she occasionally
gave orders to Memedi and other employees, and that she fired at
least one employee.  Given to totality of the evidence, the jury
was not compelled to return a verdict for the defendant.  Lana
Shamailov has failed to carry the heavy burden of showing that
she is entitled to judgment as a matter of law.

     Lana Shamailov argues that, even if there is sufficient
evidence to sustain a verdict that she is an employer at Ninth
Gotham Pizza, there is insufficient evidence as to the other
three Gotham Pizza restaurants because the plaintiffs only
testified that she fired employees at Ninth Gotham Pizza.  This
argument is unpersuasive.  Bravo testified that he saw Lana
Shamailov at York Gotham Pizza; Romano testified that he saw
Lana Shamailov at Ninth Gotham Pizza and York Gotham Pizza;
Canizal testified that he saw Lana Shamailov at Gotham Pizza,
but did not specify whether it was Ninth Gotham Pizza or First
Gotham Pizza -- the two locations where he worked.  There was
sufficient evidence for the jury to conclude that Lana Shamailov
exercised operational control over all four locations.  First,
according to the plaintiffs, when Lana Shamailov visited the
pizzerias, she spoke with Memedi, who was a manager of all four

22

Gotham Pizza locations.  Second, Lana Shamailov was listed as
the sole shareholder of all four Gotham Pizza corporations.
Third, Michael Shamailov described the business as a single
entity during his testimony, without distinguishing between the
four corporations.  Finally, the plaintiffs testified that they
worked at multiple Gotham Pizza locations, indicating that the
four pizzerias shared employees and were operated as an
integrated whole.  Based on these facts, the jury could
reasonably conclude that Lana Shamailov had the same control
over the employees of all four Gotham Pizza restaurants.

C. **Res Judicata**

In a footnote, Lana Shamailov argues that, under the
doctrine of res judicata, the jury could not have found that she
is an employer of the employees of Gotham Pizza because it was
determined at the first trial that she was not an employer.
"The term res judicata . . . encompasses two significantly
different doctrines: claim preclusion and issue preclusion."
Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779
F.3d 102, 107 (2d Cir. 2015).  Under the doctrine of claim
preclusion, a final judgment precludes successive litigation by
a party (or its privies) on the same claim or one that could
have been brought in the previous litigation.  Id. at 107-08.
Claim preclusion does not apply here because the second trial is

23

not a successive litigation.  The plaintiffs who participated in
the second trial did not participate in the first trial, nor are
they in privity with the five plaintiffs whose claims were tried
during the first trial.  For those reasons, claim preclusion
does not apply.

Issue preclusion bars a party from relitigating an issue
that has been decided in a prior proceeding.  For issue
preclusion to apply, the following factors must be met:

> (1) the identical issue was raised in a previous
> proceeding; (2) the issue was actually litigated and
> decided in the previous proceeding; (3) the party had
> a full and fair opportunity to litigate the issue; and
> (4) the resolution of the issue was necessary to
> support a valid and final judgment on the merits.

Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013) (citation
omitted).  Issue preclusion does not apply for the simple reason
that the plaintiffs in the second trial never had a prior
opportunity to litigate the issue of whether Lana Shamailov was
their employer.  They did not participate in the first trial.
Similarly, there was no determination at the first trial that
Lana Shamailov was not an employer of the plaintiffs who
participated in the second trial.  The Court granted a motion
for a directed verdict because the five plaintiffs in the first
trial had failed to meet their burden of showing that she was
their employer.  The remaining plaintiffs have a right to

present their own evidence on this issue.

## II.  Request for a New Trial

A court may grant a new trial following a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A new trial may be granted "if the verdict is against the weight of the evidence," meaning that the verdict is "seriously erroneous" or "a miscarriage of justice."  Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417–18 (2d Cir. 2012) (citation omitted).  In ruling on a motion for a new trial, the jury's determination as to the credibility of witnesses is entitled to deference and the trial judge "may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury."  Id. at 418 (citation omitted).

For the same reasons discussed above, the jury's verdict is neither "seriously erroneous," nor a "miscarriage of justice." A reasonable juror could conclude, based on the evidence presented at trial, that Lana Shamailov was the employer of the employees of Gotham Pizza.  Accordingly, a new trial is not warranted.

Lana Shamailov's contends three comments made by plaintiffs' counsel during summation require a new trial.

25

First, plaintiffs' counsel stated during summation that "[Lana Shamailov] testified today, [that she] never received any profits from the Gotham Pizza corporations.  If that's the case, then the Gotham Pizza corporations filed false tax returns." The Court overruled defense counsel's objection to this statement and gave the following limiting instruction to the jury: "Ladies and gentlemen, obviously this is not a tax case. This is a case about whether someone functioned as an employer, as I will explain that legal definition to you."  Lana Shamailov argues that this statement was prejudicial because it suggests that Gotham Pizza filed false tax returns.  Plaintiffs' counsel was arguing that the jury should believe the tax returns were accurate, and that Lana Shamailov lied when she said she did not receive any profits from Gotham Pizza as the sole shareholder. Of course, the plaintiffs were entitled to impeach the credibility of Lana Shamailov and their counsel was permitted, during summation, to encourage the jury to disbelieve her testimony.

Second, plaintiffs' counsel stated: "You also heard today Michael Shamailov confirm that Lana Shamailov was the president of 1443 York Gotham Pizza, Inc. . . . . [T]his is something that has real legal authority, being the top person in an organization.  That's what chief executive or president

26

typically means.  It means you have the power to control the
matters of the company, its operations, including matters
relating to employees."  Lana Shamailov contends this statement
was prejudicial because although a CEO typically has control
over a company, there was no evidence that Lana Shamailov
actually had such authority over Gotham Pizza.  As described
above, however, there was sufficient evidence for the jury to
conclude that Lana Shamailov exercised operational control over
Gotham Pizza.  The Court also instructed the jury that
ownership, standing alone, is insufficient to make Lana
Shamailov an "employer" under the FLSA and NYLL.

Finally, plaintiffs' counsel stated: "You can think about
your own work experiences.  You may not see the top person in
your organization on a regular basis.  They may rarely or even
never speak with you.  That doesn't mean that they are not in
charge of the business, in charge of the corporation; that they
are not ultimately people who are employing you."  Lana
Shamailov argues that the jurors' own experiences should not
have been considered by the jury because their own understanding
of who is an employer could differ from that of the FLSA and
NYLL.  Plaintiffs' counsel's statement appears to argue that
even if Lana Shamailov was not present in the Gotham Pizza
pizzerias on a daily basis, that did not preclude the jury from

27

determining that she is an employer of the employees of Gotham Pizza.

The Court instructed the jury on the factors they may consider in determining of Lana Shamailov is the plaintiffs' employer.  Those instructions included that "[o]wnership, or a stake in the company, is insufficient to establish that an individual is an employer unless the owner also has some involvement in the company's relationship with its employees." The Court further instructed the jury that the

> [f]actors that bear on the economic realities of the
> employer/employee relationship include, but are not
> limited to, whether the defendant has the authority
> to: (1) hire and fire employees; (2) supervise and
> control employees' work schedules or conditions of
> employment; (3) determine the rate and method of
> payment for employees; and (4) maintain employment
> records for employees.

The defendant made no objection to this description of the legal standards the jury should apply to the evidence.  The remarks of the plaintiffs' counsel essentially reminded jurors that, for purposes of these labor laws, an employer need not be an employee's direct supervisor.  This is a correct statement. Accordingly, none of the statements made by plaintiffs' counsel during summation warrants a new trial.

## Conclusion

The defendant's September 19 motion for judgment as a matter of law or for a new trial is denied.

Dated:     New York, New York
           November 22, 2016

_____
DENISE COTE
United States District Judge

29